# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In the Matter of the Application of )<br>)<br>)<br>nChain Holding AG )<br>) Case No. _____<br>)<br>Applicant, )<br>)<br>For an Order Pursuant to 28 U.S.C. § 1782 )<br>Directing Discovery for Use in Proceedings )<br>In the United Kingdom ) | |

## DECLARATION OF STEFAN MATTHEWS

I, Stefan Matthews, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge and/or business records that I have prepared or reviewed.

2. I am the Executive Chairman and CEO of the nChain group of companies ("the nChain Group"), which includes nChain UK Limited (Registration Number: 09823112) ("nChain"). The Applicant ("nChain Holding AG") is the parent company of the nChain Group, registered in Liechtenstein and formerly called HEH Holding AG ("HEH").

3. I am a co-founder of nChain and have been serving as the Executive Chairman of the nChain Group since 2015.

1

4. The nChain Group is a private group of companies that provides blockchain technology, IP licensing, and consulting services.

5. On 10 November 2022, HEH appointed Christen Ager-Hanssen as the nChain Group CEO, pursuant to a consulting agreement (the "Consulting Agreement"). Attached hereto as Exhibit 1 is a true and correct copy of the Consulting Agreement. Ager-Hanssen was an appointed director of nChain as well as two other nChain subsidiary companies in England and Wales. He was not and has never been an appointed director of HEH/the Applicant.

6. I understand that Ager-Hanssen managed and continues to manage other businesses, including businesses within a family of companies known as "Custos" and one known as "AddReax".

7. When Ager-Hanssen joined nChain, he hired several individuals including David Brookes, who I learned was the General Counsel of one of the Custos entities, Endri Gjata, who I learned was the Chief Technology Officer at the Custos Group, and Lars Bo, who I learned subsequently has been associated with Ager-Hanssen for many years. While at nChain, Ager-Hanssen also engaged a barrister, Zafar Ali KC, and Peter Coulson, who I understand is a former officer in the British Navy.

8. On 27 September 2023 I received an email from Ager-Hanssen with two attachments, one being the document he called "the Fairway Brief", styled as a

whistleblower report. The Fairway Brief contains several pieces of confidential and commercially sensitive information, including excerpts of communications supposedly sent between nChain directors and executives, as well as excerpts of private agreements that nChain had supposedly entered into. Alongside these excerpts, Ager-Hanssen made allegations about how, in Ager-Hanssen's views, these agreements and other corporate governance matters amounted to a criminal conspiracy and fraud on the shareholders and option holders. When I received the Fairway Brief from Ager-Hanssen, I circulated it to the HEH board and confirmed I had done so to Ager-Hanssen.

9. The other attachment to Ager-Hanssen's email was entitled "minutes of a meeting of Group Management of HEH Holding Group held on 26 September 2023." I understand that the day before Ager-Hanssen emailed me, he convened what he called a "management" meeting, and this document purported to be the accompanying minutes. No members of the HEH board appeared to have been present at this meeting. Among those in attendance were some staff and various individuals at nChain affiliated with Ager-Hanssen, including Coulson, Bo, Ali and nChain's then-CFO, Andrew Moody.

10. Through reading the purported minutes of the 26 September meeting, I understand that Ager-Hanssen presented the Fairway Brief as a valid whistleblower report and claimed that the alleged conduct described in the Fairway Brief provided

a basis to remove senior nChain officers and directors, which would give Ager-Hanssen de facto control of the company.

11.  On 27 September 2023, Ager-Hanssen and others including Coulson, Gjata, Brookes, and Moody sought to take control of nChain's London offices and to access, without authorization, the email accounts and confidential information of several nChain personnel. When I came to learn of this, I immediately emailed Ager-Hanssen to advise that access to company email accounts and files required HEH Board approval, which had not been granted in these circumstances.

12.  At around 4pm that day, the HEH board resolved to terminate Ager-Hanssen's Consulting Agreement for cause. Ager-Hanssen was dismissed and notified of the termination that evening. (*See* Company Statement, Ex. 2.) Attached hereto as Exhibit 2 is a true and correct copy of nChain's Company Statement on Ager-Hanssen's employment termination. Thereafter, Ager-Hanssen was removed as a director of the nChain Group companies.

13.  Following Ager-Hanssen's termination, an independent investigation was commissioned to investigate the allegations contained in the Fairway Brief. The independent investigation found that the allegations of criminal conspiracy and fraud on the shareholders and option holders were not adequately substantiated, and that Ager-Hanssen had no reasonable belief that the information he disclosed in the Fairway Brief was substantially true.

14. As well as investigating the allegations in the Fairway Brief, the investigation considered the events of 26 and 27 September 2023, as well as Ager-Hanssen's conduct and activities whilst he was in the role of CEO more generally.

15. Various details came to light as a result of the independent investigation. I came to learn that Ager-Hanssen requested that the attendees of the 26 September meeting sign pre-written minutes of the meeting authorizing various courses of action. Those pre-written minutes were one of the documents I was sent by Ager-Hanssen on September 27, 2023. The pre-written minutes also included a demand that IT give Ager-Hanssen and others access to the emails of nChain's Chief Intellectual Property Officer, Robert Alizon. The pre-written minutes further demanded that IT give Ager-Hanssen and others access to the emails of all parties involved in some of the agreements discussed in the Fairway Brief. Ali instructed the meeting's attendees that they were at legal risk if they did not comply with Ager-Hanssen's demands.

16. nChain is still developing a full picture of Ager-Hanssen's activities as CEO. It currently knows, however, that Ager-Hanssen hired his family members, childhood friends, several Custos and AddReax employees and business connections—but nChain has not been able to determine what (if anything) many of those individuals were hired to do.

17. For example, Ager-Hanssen's son was paid a total of £127,436 by nChain, but nChain has only identified scant evidence of work he performed.

18. I understand that Eric Finnerud has possession of the Fairway Brief and potentially other confidential and/or privileged information of nChain. Notwithstanding any business dealings Finnerud may have had with Ager-Hanssen and nChain, I am not aware of any legitimate business purpose for which Mr. Finnerud would or should possess the confidential and commercially sensitive material included in the Fairway Brief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Philippines

Executed this 15th day of July, 2024.

Respectfully submitted,

_____
Stefan Matthews