IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In the Matter of the Application of ) <br> ) <br> ) <br> nChain Holding AG ) <br> ) Case No. _____ <br> ) <br> Applicant, ) <br> ) <br> For an Order Pursuant to 28 U.S.C. § 1782 ) <br> Directing Discovery for Use in Proceedings ) <br> In the United Kingdom ) | |

**DECLARATION OF WILLIAM ANDERSON**

I, William Anderson, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge and/or business records that I have prepared or reviewed.

2. I am a Partner in the Edinburgh office of the law firm, CMS Cameron McKenna Nabarro Olswang, United Kingdom ("CMS"). I am qualified in English law and have over ten years of managing litigation in the High Court and Court of Appeal in England and Wales. Among other things, I advise clients on shareholder disputes and disputes relating to corporate transactions, including misrepresentation and fraud.

1

3. I represent nChain Holding AG ("nChain") in proceedings against its former Chief Executive Officer ("CEO"), Christen Ager-Hanssen, in the High Court of Justice in London, England (the "High Court").

4. nChain terminated Ager-Hanssen's employment on September 27, 2023. On September 30, 2023, following Ager-Hanssen's termination, CMS sent a letter to Ager-Hanssen reminding him of his confidentiality obligations under a Consulting Agreement he had entered into with nChain in connection with his role as nChain's CEO. (*See* Consulting Agreement attached as Ex. 1 to Matthews Declaration.) CMS's letter further requested Ager-Hanssen to return all information and other property belonging to nChain. Attached hereto at Exhibit 1 is a true and correct copy of CMS's September 30, 2023 Letter to Ager-Hanssen.

5. On October 5, 2023, Ager-Hanssen's then-counsel at Greenberg Traurig LLP ("Greenberg") wrote to CMS stating that they were reviewing all relevant documentation and that they would be responding substantively to CMS's September 30, 2023, letter, but CMS never received a substantive response from Greenberg.

6. On September 30, 2023, Ager-Hanssen, published excerpts of a report online on the service known as "X" (formerly Twitter). The title of the report is, "The Fairway Brief." Ager-Hanssen authored the Fairway Brief and styled it as a whistleblowing report.

7.      On October 11, 2023, Ager-Hanssen published a partially redacted version of the Fairway Brief online and posted a link to the Fairway Brief on X. Ager-Hanssen's October 11, 2023, posts on X further promised to publish voice recordings and other materials that he claimed would verify the allegations in the Fairway Brief.

8.      On October 13, 2023, acting on behalf of nChain, CMS filed an application for an urgent prohibitory injunction without notice against Ager-Hanssen in the Business and Property Courts of England and Wales at the High Court of Justice in London ("High Court").  The application explained that, by publishing and posting about the Fairway Brief online, Ager-Hanssen had violated the Consulting Agreement's prohibition against Ager-Hanssen disclosing nChain's "Confidential Information," as that term is defined under the Consulting Agreement.  nChain's application further claimed that Ager-Hanssen had violated a duty of confidence he owed nChain as its former CEO.

9.      Later the same day, the High Court granted that application, prohibiting Ager-Hanssen from publishing the Fairway Brief and Confidential Information in his possession or control (the "October 13 Injunction").  (October 13 Injunction, Ex. 2 at 3.)  Attached hereto as Exhibit 2 is a true and correct copy of the October 13 Injunction.

3

10. On October 27, 2023, the High Court continued the injunction against Ager-Hanssen until trial or further order. (*See* October 27 Injunction, Ex. 3, at 2.) Attached hereto as Exhibit 3 is a true and correct copy of the October 27 Injunction.

11. Ager-Hanssen appeared as a litigant in person (i.e., unrepresented) at the October 27, 2023 hearing. Save for this hearing, Ager-Hanssen has not entered an appearance in the case (with or without counsel).

12. On November 2, 2023, acting through CMS, nChain applied for an order requiring Ager-Hanssen to deliver to nChain certain devices belonging to the company and to surrender his personal devices to an IT expert so that nChain's Confidential Information could be removed.

13. On January 19, 2024, the High Court ordered Ager-Hanssen to return the devices to nChain by January 26, 2024, and to deliver his personal devices to an IT expert to delete all Confidential Information from the devices. (Device Return Order, Ex. 4 at 2, 3-6.). Attached hereto as Exhibit 4 is a true and correct copy of the Device Return Order.

14. On February 2, 2024, CMS filed a summary judgment application to the High Court to make the October 27 Injunction permanent.

15. Ager-Hanssen did not comply with the Device Return Order and did not deliver any of the devices he was ordered to deliver to the IT expert. Nor did

4

Ager-Hanssen respond substantively to nChain's summary judgment application to make the October 27 Injunction permanent.

16. On April 19, 2024, the High Court made the October 27 Injunction permanent. (See April 19, 2024, Order, Ex. 5 at 2.) Attached hereto as Exhibit 5 is a true and correct copy of the Permanent Injunction Order.

17. Because Ager-Hanssen failed to comply with the October 27 Injunction and the Device Return Order, the High Court sentenced Ager-Hanssen to ten months in prison for contempt on May 3, 2024. (*See generally* Contempt Order., Ex. 6.) Attached as Exhibit 6 is a true and correct copy of the May 3, 2024, Contempt Order. Attached as Exhibit 7 is a true and correct copy of the Approved Judgment of Mr. Justice Jacobs issued following the hearing on nChain's contempt application.

18. My colleagues and I at CMS, together with the firm of BDB Pitmans, are now assisting nChain in bringing new claims against Ager-Hanssen and several co-conspirators involved in events precipitating the publication of the Fairway Brief. As set forth more fully in Stefan Matthews's Declaration, nChain's investigation has revealed that several individuals, including Ager-Hanssen, were involved or potentially involved in a conspiracy to take control of nChain with the intention of obtaining confidential information belonging to nChain by unlawful means. These individuals are, Andrew Moody, David Brookes, Zafar Ali KC, Endri Gjata, Lars-Jacob Bo, and Peter Coulson (together with Ager-Hanssen, the "Co-Conspirators").

19. nChain's investigation so far has led it to conclude that at least some and potentially all of the Co-Conspirators falsely presented the Fairway Brief as a whistleblowing report, when the Co-Conspirators knew that was not true, and was in fact a means of using false or misleading allegations to cause nChain employees to comply with Ager-Hanssen's demands and thereby gain access to Confidential Information.

20. My understanding is that many of the Co-Conspirators had a relationship with Ager-Hanssen before he worked at nChain and that Ager-Hanssen was instrumental in hiring several of them into various officer roles at nChain.

21. nChain has sent these individuals "notices of claim," which are pre-action letters that parties must send before commencing proceedings in the Courts of England and Wales in order to comply with pre-action protocol.

22. Attached hereto as Exhibit 8 is a true and correct copy of nChain's letter of claim against Christen Ager-Hanssen. Attached hereto as Exhibit 9 is a true and correct copy of nChain's letter of claim against Andrew Moody. Attached here to as Exhibit 10 is a true and correct copy of nChain's letter of claim against David Brookes. Attached hereto as Exhibit 11 is a true and correct copy of nChain's letter of claim against Zafar Ali KC. Attached hereto as Exhibit 12 is a true and correct copy of nChain's letter of claim against Endri Gjata. Attached hereto as Exhibit 13 is a true and correct copy of nChain's letter of claim against Lars-Jacob Bo. Attached

6

hereto as Exhibit 14 is a true and correct copy of nChain's letter of claim against Peter Coulson.

23. As described in those letters, nChain intends to pursue claims for "unlawful means conspiracy" against the Co-Conspirators.

24. In addition to the new claims against the Co-Conspirators, nChain is preparing to bring a claim for an injunction against Custos Group Limited ("Custos"), a company incorporated in England and Wales of which Ager-Hanssen is the sole registered director and majority shareholder. During nChain's earlier High Court proceedings against him, Ager-Hanssen admitted through an affidavit that, while he was nChain's CEO, thousands of emails were forwarded from his nChain email account to his Custos email account and that some of those emails likely contain nChain's Confidential Information.

25. On April 12, 2024, nChain sent a letter to Custos that requested Custos to return all of nChain's Confidential Information in its possession and then delete such information from Custos's servers. Attached as Exhibit 19 is a true and correct copy of nChain's April 12, 2024 letter. Custos never complied with nChain's request.

26. nChain is now preparing to seek an injunction against Custos that would prohibit Custos from, among other things, using, publishing, or disclosing the Fairway Brief and nChain's other Confidential Information. nChain also intends to

7

seek an injunction requiring Custos to, among other things, (i) surrender to a forensic IT expert any devices in Custos's control that may contain nChain's Confidential Information for the purposes of imaging and deleting such Confidential Information; (ii) surrender hard copies of any documents in Custos's possession that contain Confidential Information; (iii) provide the IT expert with access to Ager-Hanssen's email account and any other data storage systems that may contain Confidential Information; (iv) identify other documents, devices, and storage facilities that Custos may have provided nChain's Confidential Information; and (v) provide passwords and other credentials necessary to enable the IT expert to obtain access to Custos's devices and accounts for purposes of imaging and deleting nChain's Confidential Information.

27. On January 29, 2024, nChain received a letter from counsel for Eric Finnerud (also known as "E. Smitty"). (Attached hereto as Exhibit 15 is a true and correct copy of counsel for Finnerud's January 29, 2024, letter). Finnerud's letter alleged that around the time nChain terminated Ager-Hanssen's employment, nChain breached a purported oral agreement between nChain and Finnerud. (*See generally id.*)

28. nChain responded in a letter through counsel dated February 27, 2024, asking Finnerud various questions. Attached hereto as Exhibit 16 is a true and correct copy of counsel for nChain's February 27, 2024, letter.

8

29. Counsel for Finnerud responded the same day. Attached hereto as Exhibit 17 is a true and correct copy of counsel for Finnerud's February 27, 2024, letter, excluding the Fairway Brief, which Finnerud's letter attached.

30. In his February 27 letter, Finnerud, through counsel, stated he had "evidence of many details set forth in that certain document commonly referred to as 'The Fairway Brief,' dated 26 September 2023"; "audio recordings of discussions among nChain developers and attorneys with [Finnerud]"; and "affidavits and testimony of former and current C-suite executives and in-house and outside legal counsel, including nChain's former Chief Executive Officer, Christian [sic] Ager-Hanssen." (*See id.* at 2.)

31. The letter attached a fully unredacted copy of the Fairway Brief. The version Ager-Hanssen had publicly posted in October was a partially redacted copy.

32. Finnerud's letter further states his "belie[f] [that] the public revelation of these unlawful claims and the associated information [would be] catastrophic for the BSV blockchain, nChain and the nChain Group." (*Id.* at 1.)

33. nChain responded to Finnerud's letter in a letter dated April 12, 2024. In nChain's April 12, 2024 letter, nChain asked Finnerud's counsel several questions to confirm whether, and to what extent, Ager-Hansen has transmitted nChain's Confidential Information to Finnerud and others. (*See generally* nChain April 12,

9

2024, Letter, Ex. 18.  Attached hereto as Exhibit 18 is a true and correct copy of nChain's April 12, 2024, Letter to Finnerud.

34.   Finnerud has continued to send correspondence regarding his purported claims, though he has not commenced any of the procedural steps he would need to follow to initiate litigation.  Were he to do so, nChain would vigorously defend itself against these meritless claims.

35.   I am not aware of any means by which Finnerud could have obtained an unredacted copy of the Fairway Brief except from Ager-Hanssen, his Co-Conspirators, or Custos.

36.   The discovery sought by the Application will help nChain litigate its claims against Ager-Hanssen and his Co-Conspirators. Evidence of Finnerud's knowledge and possession of the unredacted Fairway Brief, and his purported oral contract with nChain, could shed light on Ager-Hanssen's or his Co-Conspirators' conduct, including their use of confidential and privileged material belonging to nChain.

37.   The discovery sought by the Application will also help nChain litigate its claims for injunctive relief against Custos.  Evidence of Finnerud obtaining the Fairway Brief or nChain's other Confidential Information from Custos would support the mandatory and prohibitory injunctive relief that nChain seeks against Custos.

10

38. I am not aware of nChain being subject to any court order anywhere in the world that prohibits it from pursuing the discovery requested by the Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Edinburgh

Executed this 12th day of July 2024.

Respectfully submitted,

William Anderson