# Exhibit 7



Neutral Citation Number: [2024] EWHC 1230 (Comm)

Case No: CL-2023-000745

**IN THE HIGH COURT OF JUSTICE
KING'S BENCH DIVISION
BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES
COMMERCIAL COURT**

Royal Courts of Justice, Rolls Building
Fetter Lane, London, EC4A 1NL

Date: 03/05/2024

Before :

**MR JUSTICE JACOBS**

- - - - - - - - - - - - - - - - - - - - -

Between :

| | |
|---|---|
| **NCHAIN HOLDING AG (FORMERLY HEH HOLDING AG)** | **Claimant** |
| - and - | |
| **CHRISTEN AGER-HANSSEN** | **Defendant** |

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

**Tom Montagu-Smith and Philip Hinks** (instructed by **CMS Cameron McKenna Nabarro Olswang LLP**) for the **Claimant**
**THE DEFENDANT** did not attend and was not represented

Hearing dates: 3rd May 2024
- - - - - - - - - - - - - - - - - - - - -

## Approved Judgment

This judgment was handed down on 3rd May 2024. Transcribed from the official recording by eScribers

.............................

MR JUSTICE JACOBS

**MR JUSTICE JACOBS:**

1. This is an application by the Claimant, nChain Holding AG, for committal of the Defendant for three contempts which they say have arisen because of non-compliance with an order made in October 2023 by Mr Charles Hollander KC and an order made in January 2024 by Mr Justice Henshaw.

2. The background to this case is that the Defendant is the former Chief Executive Officer of the group of which the Claimant is the parent company. He held that position for approximately one year pursuant to a consulting agreement with the Claimant. The agreement was dated 17 March 2023, but it confirmed that he was already in place at the time when the agreement was signed.

3. The claim arises from the fact that the Defendant was privy to a substantial amount of information that was confidential to the Claimant and its group of companies and that, following the termination of his appointment in October 2023, the Defendant published a report that he had prepared called the "Fairway Brief" which he put onto the X platform (formerly Twitter).

4. The next development for present purposes was that an application was made to Mr Justice Henshaw in October by the Claimant. On 13 October 2023, Mr Justice Henshaw made an order which is not the subject of the present committal proceedings. That order required the Defendant to remove the report from his website. He also made certain other orders which sought to protect the Claimant's rights in the confidential information to which the Defendant had been privy as a result of his engagement as CEO, including orders for the provision of information as to the people to whom confidential information had been passed.

5. The Defendant then appointed Mishcon de Reya as his solicitors. There was compliance, at least to some extent, with the disclosure aspects of the orders which Mr Justice Henshaw had made, in that certain information was provided by Mishcon de Reya and an affidavit confirming the truthfulness of that information was subsequently provided. However, the Claimant was not satisfied with the extent of the compliance and that led to a further application which was made on the return date of the original order and that came before Mr Charles Hollander KC on 27 October 2023. He made an order on that occasion which, to a large extent, restated aspects of the order which Mr Justice Henshaw had made. That order gives rise to the first of the matters which are relied upon by the Claimant by way of contempt.

6. The case then came back to the court in January 2024 in the context of evidence from the Claimant that the Defendant had not been complying with the court's previous orders, in that (as the Claimant contended) he had continued to make available their confidential information. That led to an order which Mr Justice Henshaw made on 19 January 2024. I will return in due course to the details of that order but, in summary, it required the Defendant to deliver up certain computer equipment with which he had been provided and which was the property of the Claimant. It also required him to make his personal devices and other materials available to an expert for imaging, in order to understand exactly what it was that the Defendant retained from the confidential information which he had obtained during his role as CEO.

7. The contempt application with which I am concerned deals with breaches of that second order made by Mr Justice Henshaw because, in summary, the Defendant has not complied with the critical aspects of that order.

8. The first question which I need to decide, however, is whether or not I should proceed with this case in the absence of the Defendant. The position is that the Defendant originally instructed a firm of solicitors and they were quite soon afterwards replaced by Mishcon de Reya to whom I have referred. Mishcon de Reya's instructions were subsequently withdrawn. Although the Defendant had indicated that he would be instructing new lawyers he has not done so. The position overall is that the Defendant has not participated in these proceedings in any meaningful way from the time of the order of Mr Charles Hollander KC.

9. The Defendant was, however present at that hearing before Mr Hollander, which was a remote hearing in October, and he was therefore aware of the orders which were being made. He was also, on the materials which I have seen, quite clearly aware that a further hearing was taking place on 19 January 2024. He did not attend that hearing, but he sent the Claimant's solicitors a short email shortly before that hearing. Mr Justice Henshaw treated that e-mail as effectively an application to adjourn, which he refused. The Defendant did not participate in the January hearing. He also did not participate when the matter was before me two weeks ago, when the Claimant successfully applied for summary judgment in respect of their substantive claims for relief.

10. The Defendant has used three different email addresses during the course of the events which I have been describing, and he has from time to time communicated with the Claimant. For the purposes of the summary judgment hearing, which was a hybrid hearing, my clerk sent him a link which would have enabled him to participate remotely, but he did not do so.

11. The court must proceed with considerable care and caution before deciding to proceed with a case in the absence of the Defendant. In some cases it is possible for the court to take the view that it will adjourn the hearing and issue a bench warrant to compel the Defendant to attend. In the present case, however, that does not seem to me to be a feasible way of compelling attendance, because the evidence indicates that the Defendant is not within the jurisdiction. It appears from recent materials that he is in Norway, allegedly with his mother, and so the issue of a bench warrant is not an available option.

12. The checklist of factors which I need to consider in relation to whether or not to proceed in the absence of the Defendant is conveniently set out in the decision of Mr Justice Cobb in *Sanchez v Oboz* [2015] EWHC 235 (Fam) and I will deal with each of those factors in turn, which are set out in paragraph [5] of that judgment.

13. The first question is whether the Defendant has been served with the relevant documents, including notice of the hearing. The second question, which one can conveniently take at the same time, is whether the Defendant has had sufficient notice to enable him to prepare for the hearing.

14. Mr Montagu-Smith KC, who appears for the Claimant together with Mr Hinks, has taken me carefully through the underlying materials, but it is not necessary to set these out in detail in this judgment. It is sufficient to summarise the position as follows.

15. It is clear that the Defendant was aware of the order which was initially made by Mr Hollander KC at the return date, because the Defendant participated in the hearing on that return date. It is also clear from subsequent correspondence that the order was sent to him and, in fact, he indicated that he had read it.

16. It is also clear that the Defendant was aware of the upcoming hearing in January before Mr Justice Henshaw. He sent an email very shortly before that hearing to the Claimant's solicitors. The Judge was aware of what was said in that email and he treated it as effectively an application to adjourn. He also took into account an allegation which had been made by the Defendant that he was not in a fit medical state to attend the hearing. The Judge considered both of those matters and decided, in a judgment which I have seen, that there was no real substance to either point. The judge therefore proceeded with the hearing.

17. The position subsequently is that the Claimant took proper steps to notify the Defendant of the orders which has been made by Mr Justice Henshaw. That included an attempt which was made to serve the order personally, because at that point the Defendant was living in London. That attempt was not successful, because the Defendant evaded personal service. However, the Claimant was entitled, pursuant to the very first order made by Mr Justice Henshaw on 13 October 2023, to serve by email. It is clear from the correspondence which I have seen that emails were thereafter sent to the Defendant at the e-mail addresses specified in the order, and I have no doubt that they were received.

18. The Defendant has from time to time indicated that one of his email accounts is not monitored, but it is clear from other materials that even that account is looked at from time to time by the Defendant. It is also clear from the other evidence in the hearing bundle that the Defendant has been using two email addresses and both of those appear to have been monitored and, indeed, used - at least one of them used in recent days.

19. The upshot of all of that is that the Defendant is unquestionably aware of the original orders which were made.

20. There is then the separate question is whether he was aware of the present application. The position in that respect can be summarised as follows. Mrs Justice Dias had made an order which confirmed that proper notice had been given of the earlier orders and which also permitted service of the present application to take place by email rather than by way of personal service. It is clear from the materials in the hearing bundle that all relevant documents, including the application and information as to the date of the hearing, have been communicated to the Defendant by email. I have no doubt that he has been properly served by e-mail pursuant to the relevant court orders and that he has had sufficient notice to enable him to prepare for this hearing.

21. The third question is whether any reason has been advanced for his non-appearance. The Defendant has not put forward any reason for the purposes of today's hearing. There has in the past been a reference to his ill-health. I was shown by Mr Montagu-Smith a doctor's letter which is dated January 2024 which indicates that the Defendant was suffering at that stage from stress related problems. However, that was a letter dated back in January, and it envisaged that the Defendant would be subject to some treatment. I have no further letters from any doctor indicating that he is not in a position to deal with the present hearing.

22. I have also been referred to materials which indicate that the Defendant has, in fact, been able to deal with a separate but related aspect of the present case, namely a bankruptcy petition which was commenced by the Claimant and which was ultimately addressed by the Defendant making payment of the relevant sums which were owed to the Claimant in relation to costs orders which had previously been made. There is some reference in the papers to the Defendant needing to be in Norway to look after his sick mother. There is, however, no material before me which shows that there is any particular illness from which his mother is suffering, nor indeed that his presence there, as opposed to the presence of somebody else who could look after her, is necessary in order to deal with whatever problems his mother might have.

23. Accordingly, I do not consider that any reason has been advanced for his non-appearance.

24. The next matter which I need to consider is whether the Defendant has, by reference to the nature and circumstances of his behaviour, waived his right to be present. It seems to me to follow from what I have already said, and from the Defendant's conduct of this matter since the last time he made any substantive appearance in the case (i.e. at the hearing before Mr Hollander KC on 27 October 2023) that the Defendant has waived his right to be present. He knows of the present proceedings. He has been given explanations in correspondence as to the effect of the various orders which have been made. He knows of the committal proceedings as well as the original orders and I can only conclude that his non-attendance today is a waiver of his rights.

25. I can deal briefly with the remaining factors. An adjournment would not be likely to secure the attendance of the Defendant. He has obviously decided not to participate in these proceedings and it appears that he has left the jurisdiction. I cannot see at the moment that there is any disadvantage to the Defendant in not being able to present his account of events. The factual evidence in this case is that the relevant parts of the orders that were made have not been complied with. This is not a case where there has been some compliance with those parts, and one is trying to ascertain the extent of the compliance. It is simply a case where orders have been made which have not been complied with and I cannot for my part identify any particular disadvantage to the Defendant in not being able to present his account of events. There has in any event been plenty of opportunity for him to present that account.

26. I consider that the Claimant would be prejudiced by delay. Of course, if there was a short delay there would not be significant prejudice, but the option in the present case would be to adjourn to another date when the Defendant would almost certainly not appear. It does seem to me that the Claimant, who has legitimate interests to protect and which have been protected by court orders, should be entitled to request the court to exercise its powers in order to ensure that there is compliance with the orders in so far as the court is able to do that.

27. I do not consider that undue prejudice would be caused to the forensic process if the application was to proceed in the absence of the Defendant. That, to some extent, is a point which is tied up with the fact that there is, as far as I can see, no defence to the case advanced that there has been non-compliance with the court's past orders. I have no doubt that the overriding objective in the context of the case such as the present is satisfied by the court deciding to proceed rather than putting the case off for some unspecified and uncertain period of time. There is a public interest in contempt

        proceedings being dealt with swiftly and decisively and that is what I consider should be done here.

28. I therefore have no doubt that I should proceed in the absence of the Defendant.

29. That brings me to the requirements which need to be satisfied in order to decide whether or not there has, in fact, been a contempt in this case. Mr Hinks, junior counsel, has helpfully referred me to the recent authority in *Navigator Equities v Deripaska* [2024] EWCA Civ 268, where the Court of Appeal approved a summary of the relevant principles by his Honour Judge Pelling which are applicable to contempt applications. It is important, of course, that a case of contempt is proved to the criminal standard of proof - that means beyond reasonable doubt, so that I am sure. I need to be sure of a number of factors, namely: first, that the Defendant knew the terms of the order that was breached; secondly, acted in breach of or failed to act in compliance with the order concerned; and, thirdly, that he knew of the facts which made his conduct a breach. Those are the factors set out in subparagraph (ii) at paragraph [47] of that judgment (quoting paragraph [31] of HHJ Pelling's judgment below).

30. That brings me to the terms of the relevant orders which were made and which are alleged to have been breached in the present case. The first relevant order is that made by Mr Hollander KC in October 2023. Paragraph 6 of the order is in the following terms:

> "Provision of information and affidavit
>
> 6. By 4.00 pm on 3 November 2023, the Defendant shall swear and serve on the Claimant's legal advisors an affidavit setting out the following information to the best of his ability:
>
> 6.1. What Confidential Information he has made available to the public since 27 September 2023, and how he made that information so available.
>
> 6.2. The identities of all persons to whom the Defendant has provided Confidential Information since 27 September 2023".

The words "Confidential Information" were capitalised and they were defined earlier in the order which was made by Mr Hollander KC.

31. That is the first order which is the subject of the present application and there is no doubt that that order was not complied with. I had some discussion with Mr Hinks as to precisely why that order was appropriate, given that some information had been provided by Mishcon de Reya and then confirmed on affidavit later on by the Defendant. But I am persuaded by what Mr Hinks said that, in a sense, that is not a relevant question in relation to breach. The question on breach is whether or not there has been non-compliance with the court order. It may be relevant to the question of sentence or sanction to which I will come later in this hearing but, as far as breach is concerned, there is no doubt that the affidavit which was required by that order was not provided.

32. The second relevant order - and in my view the more significant order when I come to deal with sanction - is non-compliance with paragraphs 2 and 4 of the order of Mr Justice Henshaw dated 19 January 2024. These orders were concerned with, first of all, paragraph 2, the delivering up of certain devices to the Claimant's solicitors:

> "2. The Defendant shall, by 4 pm on 26 January 2024, deliver up the following devices to the Claimant's solicitors:
>
> 2.1. Lenovo 30G1003TUK Desktop, asset name: 8-DW-000002, and serial number GM01E0GR;
>
> 2.2. MacBook Air 13, asset name: LONLAP00349, and serial number DVQ7VC4P42;
>
> 2.3. IPhone 14 Pro Max, asset name: LONMOB0049 (Mobile Number - 07796249901) and serial number KWNWGGKH45."

That was the order for delivering up of the Claimant's property and the evidence of the Claimant, which is not in dispute, is that none of those devices were in fact delivered up.

33. Paragraph 4 is concerned with the provision of confidential information to an expert to be instructed by the Claimant, and it reads as follows:

> "4. Subject to paragraph 4.5 of this order, the Defendant shall by 4 pm on 26 January 2024 ,at a location to be agreed between the parties (failing such agreement at the London offices of the Claimant's solicitors):
>
> 4.1. Surrender the following devices to the expert: (i) his personal MacBook Air computer; (ii) his personal iPhone and (iii) any other device in the Defendant's possession or control that may contain Confidential Information (together, 'the Defendant's Devices').
>
> 4.2. Surrender hard copies of any documents in the Defendant's possession or control that contain Confidential Information ('the Hard Copies').
>
> 4.3. Provide the Expert with access to: (i) his Custos Group email account (cah@custosgroup.com); (ii) any data storage system operated by or on behalf of the Custos Group, including email and document repositories and any associated back-ups, that may contain Confidential Information; and (iii) any other data storage system, including email and document repositories and any associated back-ups, in the Defendant's possession or control that may contain Confidential Information (together, 'the Defendant's Accounts').
>
> 4.4. Inform the Claimant's solicitors in writing of the location and details of any documents, computers, phones, tablets,

storage facilities (including any form of USB, SD card or external hard drive) or other electronic data storage device (including any internet-based facilities such as, without limitation, OneDrive, Dropbox, iCloud, Google Docs, email accounts, LinkedIn accounts, or other cloud storage facilities) of which the Defendant is aware which may contain Confidential Information and which are in the possession or control of a third party as a result of the Defendant providing such confidential information to that third party".

The qualification in paragraph 4.5 was simply that the Defendant was "entitled to retain access to any and all papers which have been filed by the parties in these proceedings".

34. Those were the terms of that part of the order and, again, none of the materials have been surrendered or provided to the expert. The expert was defined earlier in the order to mean the forensic IT expert appointed by the Claimant, being CYFOR Forensics.

35. The upshot of the facts which I have described so far is that the various requirements which are identified in the Navigated Equities case are clearly satisfied. I am sure that the Defendant knew of the terms of the orders which have been breached for reasons which I explained when summarising the earlier parts of the proceedings. I am also sure that he has acted in breach of the relevant orders, because he simply failed to comply with any of them and I am sure that he must have known of the facts that made his conduct a breach. That, in a sense, follows from the fact that he has been fully aware of the orders which were made. Also, he is obviously an intelligent person who commanded a very high salary in relation to his role at the Claimant company, and could easily understand the facts that make his conduct a breach.

36. It follows from all of that I am satisfied that the Defendant is in contempt of court in the respects which have been relied upon by the Claimant.

37. I am also satisfied, having looked at the Claimant's application document, that all of the requirements which are set out in CPR 81.4 have been complied with. Therefore, for all of those reasons I will proceed to consider the question of the sentence - as it is sometimes referred to in cases: in other words, the sanction for the contempts which have been proved. There is, however, a question of whether that is something which I should consider today or whether the Defendant should be given an opportunity to come along in, say, a week's time and to comply with the orders in the meanwhile and that is something on which I will hear from Mr Montagu-Smith.

(Following further submissions)

MR JUSTICE JACOBS:

38. I must pass what is colloquially called in applications of this type a sentence in respect of the contempts which I have found. In relation to those contempts, it seems to me that the more serious contempts are those which are the breach of the orders of Mr Justice Henshaw. That is not to downplay the seriousness of the breach in relation to the provision of an affidavit pursuant to the order of Mr Hollander KC. But I have to recognise that, to some extent at least, information along the lines of Mr Hollander KC's order had previously been provided by Mishcon de Reya and confirmed on affidavit. I

       accept that the information was not as extensive as the Claimant, and indeed the court, required, but the more significant breaches are those in relation to Mr Justice Henshaw's order.

39. When it comes to the sanction to be imposed, I accept that it is a significant factor in this case that the breaches concern a large amount of confidential information which is retained by the Defendant. That confidential information, on the evidence before me, is extremely important to the Claimant's business, which is a technology business where information is at the heart of the way in which the business operates and where, ordinarily, it is critical for the business to retain confidentiality in its material.

40. I have been referred very helpfully by Mr Montagu-Smith to a number of recent cases but I hesitate to draw parallels with particular facts of particular cases. They are, at the end of the day, all different. The authorities contain very helpful statements as to the factors which one needs to consider and they have been recently summarised in paragraph 54 of the judgment of Mr Justice Morris in *The All England Lawn Tennis Club (Championships) Limited v Hardiman* [2024] EWHC 787 (KB). I do not intend to go through each of the factors identified. I have borne them generally in mind. My approach is to identify in this judgment those which are most significant in terms of my ultimate conclusion. The points which I consider to be most significant are as follows.

41. First, there are useful statements of principle in the decision of the Court of Appeal in the *Solodchenko* case, that is *JSC BTA Bank v Roman Vladimirovich Solodchenko* [2011] EWCA Civ 1241, which was a case involving continuing breaches of a disclosure order and a freezing injunction. In the context of that sort of application where there was a deliberate breach, Lord Justice Jackson said as follows at [51]:

> "I shall not attempt to catalogue all those first instance decisions. What they show, collectively, is that any deliberate and substantial breach of the restraint provisions or the disclosure provisions of a freezing order is a serious matter. Such a breach normally attracts an immediate custodial sentence which is measured in months rather than weeks and may well exceed a year. For example, Mr Shalabayev was recently sentenced to 18 months' imprisonment for his continuing failure to make disclosure as required by a freezing order which the bank obtained when joining Mr Shalabayev as fourteenth defendant in the present action … ".

       At paragraph [55], he summarised three propositions concerning sentence for civil contempt when the contempt consists of non-compliance with the disclosure provisions of a freezing order, and he says as follows:

> "(i) Freezing orders are made for good reason and in order to prevent the dissipation or spiriting away of assets. Any substantial breach of such an order is a serious matter which merits condign punishment.
>
> (ii) Condign punishment for such contempt normally means a prison sentence. However, there may be circumstances in

>> which a substantial fine is sufficient: for example, if the contempt has been purged, and the relevant assets recovered.
>
> (iii) Where there is a continuing failure to disclosure relevant information, the court should consider imposing a long sentence, possibly even the maximum of two years in order to encourage future co-operation by the contemnor".

42. That guidance was given in relation to disclosure provisions in freezing orders but I think that Mr Montagu-Smith made a fair point that, in the context of a case such as the present, where confidential information has been retained and should have been provided back to the Claimant by various means, it is difficult to say that the present situation is in some way less serious than situations where a party has failed to comply with the disclosure provisions in a freezing order. That is a factor that I bear in mind, namely the approach taken in relation to freezing orders in that case.

43. The second factor that I bear in mind, and I think is important in this case, is that there are a number of breaches. There were various aspects of the order which was made by Mr Justice Henshaw - leaving aside Mr Hollander KC's order - and none of them have been complied with.

44. Thirdly, the consequences to the Claimant are, in my view, serious in the context of the business that they are operating.

45. Fourthly, I take into account that the breaches by the Claimant are deliberate. Mr Montagu-Smith has shown me evidence that the Defendant is continuing to publish information on the X platform, and it is fair to conclude that he considers that he is not constrained in any way by orders which have previously been made. But I must bear in mind that I am not sentencing him for any breaches other than those which have been proven to the criminal standard in the present proceedings. The significant point to my mind is not to decide that there have been further breaches, but to recognise that the failure by the Defendant to comply with the court's order puts him in a position where he is able, if he is so minded, to make further use of confidential information. Had he complied with the court's order, that would be impossible or at least more difficult. All these matters are relevant because they show a deliberate and continuing breach by the Defendant and they emphasise the significance to the Claimant of the breaches which have occurred.

46. Fifthly, it is a significant point, as indicated by the *Solodchenko* case, that the breach is continuing.

47. Sixthly, this is a case where, as far as I can see, there is nothing really that can be put forward by way of mitigation to explain or excuse or to mitigate the conduct of the Defendant which I am concerned.

48. I have no doubt, bearing those factors in mind, that this is a case where an immediate custodial sentence is appropriate. I think there is no question of suspension. The circumstances of the present case are so serious that only immediate custody would be appropriate. I bear in mind that this will be, as far as I am aware, the Defendant's first prison sentence.

49. I consider that the appropriate sentence in this case for the two breaches of the order of Mr Justice Henshaw is a sentence of 10 months' imprisonment which will run concurrently with each other.

50. I will order a concurrent sentence of four months in respect of the breaches of the order of Mr Hollander KC, because I consider those to be less serious than the breaches of Mr Justice Henshaw's order.

51. I indicate that, consistent with the authorities, there should be a punitive element and a coercive element on the 10 month sentence and, although this would not bind any subsequent judge, I have in mind that the punitive element should be four months and the coercive element should be six months.

52. The position on sentences of this kind is that the Defendant is entitled to automatic release at the halfway point; in other words, after five months. I make it clear that the Defendant does have a right to appeal without permission and that there is a time limit of 21 days for appealing and that the appeal is to the Court of Appeal.

---------------