# Exhibit 13



**BDB PITMANS**

Lars-Jacob Bø
14 Fountain House
Park Street
London
W1K 7HQ

Our Ref
210293.0001

Date
29 April 2024

**By Email to lj-bo@online.no and By Post**

Dear Sir

**nChain UK Limited & nChain Holding AG -v- Christen Ager-Hanssen & Others**

We are instructed by nChain UK Limited (**nChain UK**) and nChain Holding AG formerly HEH Holding AG (**nChain Holding**) (together, **nChain**).

As set out below, our clients are investigating a conspiracy. They have sent formal letters before action to a number of the conspirators and are considering whether to also bring a claim against you, subject to your response to this letter.

**1        Introduction and Preservation Notice**

1.1      In view of the fact that nChain is contemplating bringing court proceedings against you in respect of any losses caused by your involvement in the events set out below. You should consider whether you have any applicable insurance and inform any insurers immediately.

1.2      This letter is necessarily based on the documents and information available to our clients at the time of writing, having taken a proportionate approach to investigations at this early stage of the case. We consequently reserve the right to amend or expand our clients' claims once they have had the opportunity to consider substantive responses and documents provided.

1.3      Further, where you are on notice that proceedings are in contemplation, you are under a duty, owed to the court, to take reasonable steps to preserve documents in your control that may be relevant. For this purpose, a document includes any record of any description containing information. It may take any form including but not limited to paper or electronic; it may be held by computer or on portable devices such as memory sticks or mobile phones or within databases; it includes e-mail and other electronic communications such as text messages, webmail, social media and voicemail, audio or visual recordings. In addition to information that

**Registered Office**
One Bartholomew Close          50/60 Station Road          The Anchorage               Grosvenor House
London                                    Cambridge                      34 Bridge Street            Grosvenor Square
EC1A 7BL                               CB1 2JH                          Reading, RG1 2LU          Southampton, SO15 2BE
DX 339401 London Wall         DX 339601 Cambridge 24   DX 146420 Reading 21    DX 38516 Southampton 3

**T** +44 (0)345 222 9222          **W** www.bdbpitmans.com

 BDB Pitmans is the trading name of BDB Pitmans LLP which is a limited liability partnership registered in England and Wales with registered number OC320798. Its registered office and principal place of business is One Bartholomew Close, London EC1A 7BL where a list of members' names is available for inspection. BDB Pitmans LLP is authorised and regulated by the Solicitors Regulation Authority (SRA ID no 448617). We use the word partner to refer exclusively to a member of BDB Pitmans LLP.

Please reply to: One Bartholomew Close                                                                                                                    30939159.2



is readily accessible from computer systems and other electronic devices and media, it extends to information that is stored on servers and back-up systems and electronic information that has been 'deleted'. It also extends to metadata, and other embedded data which is not typically visible on screen or a print out.

1.4     Documents to be preserved in accordance with this duty include documents which might otherwise be deleted or destroyed as a matter of routine. Preservation includes, in suitable cases, making copies of sources and documents and storing them. The duty to preserve documents includes: (1) an obligation to suspend any routine document deletion or destruction processes for the duration of the proceedings; (2) an obligation to send a written notification to any other persons under your direction or control with access to relevant documents, identifying the documents or classes of documents to be preserved and notifying them that they should not delete or destroy those documents and should take reasonable steps to preserve them; and (3) an obligation to take reasonable steps so that agents or third parties who may hold documents on your behalf do not delete or destroy documents that may be relevant to an issue in the proceedings.

**2       Overview and Basis of Claim**

2.1     Our clients' claim arises from your actions during your engagement with nChain as Deputy CEO. In particular, the claim concerns the actions at nChain's London office on 27 September 2023 in relation to a document styled as the "Fairway Brief", and falsely presented as a genuine whistleblowing report, and the intimidation of third parties in support of the false allegation of *inter alia* a criminal conspiracy among certain directors and shareholders of nChain Holding.

2.2     The Fairway Brief is said to have been authored by Christen Ager-Hanssen (**CAH**), the former nChain Group CEO (although we are actively investigating the involvement of others, including yourself).

2.3     Our clients intend to pursue those individuals involved in a conspiracy to deploy false allegations against nChain and use intimidation in order to extract confidential information belonging to nChain for their own benefit and in order to cause harm to nChain.

2.4     The Fairway Brief was presented as a whistleblowing report, which it was not, and was used to coerce and control others during the events of 27 September 2023, to disrupt the operations and proper administration of nChain and seek to unlawfully access and obtain confidential information belonging to our clients. This caused nChain to incur losses.

**3       Identity of Parties**

3.1     Our clients intend to pursue claims, principally, against CAH, Zafar Ali KC (**ZA**), Andrew Moody and David Brookes, however, we are actively investigating the involvement of you,  Peter Coulson and/or Endri Gjata (amongst others) in this conspiracy (the **Co-Conspirators**).



**4      Background**

Confidential Information of nChain

4.1     As you may be aware, CAH is already facing High Court Proceedings for breach of confidence and unlawfully obtaining and retaining confidential information belonging to our clients. Our clients believe that the Co-Conspirators, collectively, sought to obtain confidential information. This is likely to have included valuable intellectual property and commercially sensitive material.

Your Role at nChain

4.2     You were employed by nChain UK Limited from 19 June 2023 to 28 September 2023 and accepted the role of Deputy CEO.

4.3     CAH started work as Group CEO for nChain on 28 September 2022, prior to CAH formally being appointed to the role by virtue of a Consultancy Agreement dated 17 March 2023 (the **Consultancy Agreement**) with nChain AG and nChain Holding (then HEH Holding AG). CAH was appointed as a director of nChain UK on 22 December 2022. It is understood that you have had a close working relationship with CAH for some considerable time.

4.4     You were present at and participated in the meeting at Chelsea Barracks on 26 September 2023 at which you and others purported to resolve to take steps to investigate the matters set out in the Fairway Brief, including by instructing IT personnel to provide access to confidential information.

4.5     Your support of the Fairway Brief assisted the aims of the conspiracy, in particular extracting confidential information belonging to nChain and causing harm to nChain. Paragraph 31 of the Minutes shows that the Fairway Brief was intended as a basis to confer authority on CAH to access confidential information, in particular the emails of RA and "all parties involved in the 17 July Transaction".

**5      Conspiracy**

5.1     It is nChain's case that there was a conspiracy to (1) obtain confidential information belonging to nChain and its officers and / or employees with an intention to cause harm to nChain and (2) to harm the company (the **Conspiracy**).

5.2     During the "Group Management" meeting of 26 September 2023, you and others signed a set of pre-prepared "Minutes", confirming your agreement to the findings of, and statements made in the Fairway Brief, and to pursuing various specific actions against nChain and its leadership, such as the dismissal of Robert Alizon (Chief Intellectual Property Officer), the removal of Marco Bianchi from the boards of the nChain Group, gaining access to a number IT and email accounts, and the interference with the operation of the "17 July Transactions" documents.

5.3     It is nChain's case that there was a common intention to benefit from obtaining valuable confidential information (such as intellectual property), contrary to the best interests of nChain.



**BDB PITMANS**

**6        Loss**

6.1      Even if attempts to access confidential information on 27 September were unsuccessful in whole or in part, these attempts still caused material losses to nChain. The actions of the Co-Conspirators on that day caused significant disruption to the business of nChain and, in addition, compelled it to undertake a proper and comprehensive investigation report into the so-called whistleblowing (privilege in such report not being waived).

6.2      nChain's losses continue to be investigated and are accruing. These losses will be particularised in full in due course. However, as a minimum, the cost of nChain's investigations into the allegations set out in the Fairway Brief, along with the costs of restoring and preserving company documents, and all losses to and consequences of the disruption to the business are directly attributable to the Co-Conspirators.

**7        Conclusion**

7.1      We expect a response to this letter within a reasonable time. We consider that 21 days is a reasonable time in the circumstances. Your reply should include confirmation as to whether or not you accept our clients' assessment of your involvement in the unlawful activity and, if not accepted, the reasons why, together with a detailed explanation as to which facts and parts of the claim are disputed, with any supporting documentary evidence.

7.2      We request that you ensure that all correspondence in this matter is addressed to this firm under cover of the reference given above.

7.3      Once we receive your response to this letter, we will consider whether negotiation or any other form of ADR might enable us to settle this dispute without commencing court proceedings.

7.4      Ignoring this letter may lead to our clients starting proceedings against you and may increase your liability for costs.

7.5      Our clients reserve all their rights, including the right to commence proceedings against you (without further reference to you should that prove necessary) and to seek an order for damages plus interest and costs.

Yours faithfully

**BDB Pitmans LLP**
E    nChain@BDBPitmans.com