# Exhibit 15

# VALHIL LAW, PC

800 Wilcrest, Suite 206
Houston, Texas 77042
T +1 346 226 5838

**James E. Vallee**
Managing Partner
T +1 713 301 7843
jvallee@valhillaw.com

January 29, 2024

<u>VIA EMAIL and REGISTERED MAIL</u>:

nChain UK Ltd
30 Market Place
London W1W 8AP
United Kingdom
Attention: Stefan Matthews, Executive Chairman and CEO
Email: Stefan@nchain.com

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT; NOTICE TO AGENT IS NOTICE TO PRINCIPAL**

Re: NOTICE OF BREACH; CLAIM FOR CONVERSION OF INTELLECTUAL PROPERTY; LITIGATION HOLD NOTICE

Mr. Matthews:

This firm represents Eric Finnerud (professionally known pursuant to his owned-trademark – "***E. Smitty***"), (i) inventor of that certain intellectual property set forth in the provisional US patent application "Blockchain Integration in Digital Music Distribution" (application number 63/389, 715, dated July 15, 2022) (the "***Blockchain Music Distribution Patent***") and the additional provisional- and non-provisional patent-applications and associated common law intellectual property rights in certain blockchain music and video distribution systems and creator blockchain payments systems, including, without limitation, the commercial software platform commonly known as the "DistroMint Platform" (all such intellectual property, broadly claimed, together with the Blockchain Music Distribution Patent is collectively referred to in this letter as the "***Blockchain Content IP***"), (ii) sole equityholder of DistroMint, LLC, a limited liability company formed for the purpose of commercially exploiting the Blockchain Content IP pursuant to a prospective license from Mr. Finnerud in connection with the prospective launch of the DistroMint Platform (together with any subsidiaries and affiliates "***DistroMint***"), and (iii) party to that certain oral agreement, entered into by and between E. Smitty and nChain UK Ltd. (together with its subsidiaries and affiliates, "***nChain***"), on or about February 21, 2023 (the "***Development Agreement***"). **THIS LETTER IS TO INFORM YOU THAT NCHAIN IS IN MATERIAL BREACH OF THE DEVELOPMENT AGREEMENT, AND FURTHER THAT IT HAS COME TO OUR ATTENTION THAT NCHAIN AND CERTAIN OF ITS AFFILIATES HAVE UNLAWFULLY CONVERTED THE BLOCKCHAIN CONTENT IP RESULTING IN MATERIAL DAMAGES TO OUR CLIENT, E. SMITTY**.

On or about September 29, 2023, nChain terminated its relationship with your predecessor Chief Executive Officer, Christian Ager-Hanssen[1], and immediately elected not to perform its obligations under the Development Agreement, which notably included, without limitation, (i) nChain's failure to provide development personnel to complete the DistroMint Platform and assist E. Smitty to make the DistroMint Platform commercially viable, (ii) nChain's material delay in the launch of the DistroMint Platform, (iii) nChain's failure to timely pay E. Smitty in consideration of the consultancy services he continuously provided to nChain in accordance with the mutually agreed terms of the Development Agreement, and (iv) terminating E. Smitty's access to the DistroMint Platform through

---

[1] *See* "nChain Statement on departure of Christen Ager-Hanssen" dated September 29, 2023, attached hereto as <u>Exhibit A</u>.

changing log-in credentials and related adverse actions.  These failures have resulted in substantial damages to our client, which amount to a minimum of US$50 million in lost revenue and equity value recognition for the DistroMint Platform.

Moreover, and most regrettably, it has recently come to our attention that nChain's majority equityholder, Calvin Ayre, and certain entities directly or indirectly owned or controlled by Mr. Ayre and his affiliates have engaged in a coordinated process with nChain to convert the Blockchain Content IP, which intentional infringement actions by nChain, Mr. Ayre and their respective affiliates (collectively, the "***nChain Group***") may have resulted in billions of dollars in damages to our client.  *See*, *e.g.*, Exhibit B – Screenshot of Ayre Ventures website describing Mr. Ayre's affiliate entity, "Blarecast" (stating "An innovative music distribution platform with unique patent-pending technology and the power of the BSV blockchain.").  Further, nChain's intentional actions to prevent our client from accessing his intellectual property, as described above, shockingly reveals a coordinated attempt by nChain with Mr. Ayre to convert the Blockchain Content IP and unlawfully profit from our client's significant and novel blockchain technological inventions.

As a result of the material breaches of the Development Agreement by nChain, and nChain's coordinated participation with Mr. Ayre and Ayre Ventures to convert the Blockchain Content IP, the following remedies are hereby demanded:  (i) the Development Agreement is hereby terminated with immediate effect and nChain no longer has any license or claim whatsoever to the Blockchain Content IP, the DistroMint Platform or DistroMint, all of which, together with any implied rights that may arise pursuant to any powers of attorney granted by our client in connection with the Development Agreement, are hereby revoked with immediate effect, (ii) nChain is hereby directed to coordinate with our client in returning all of our client's intellectual property currently in possession of nChain, including, without limitation, full access to the DistroMint Platform and associated content, and any and all of the Blockchain Content IP, and coordinate with legal counsel that may have obtained any powers of attorney to ensure that no member of the nChain Group retains any rights to the Blockchain Content IP, whether express or implied, and (iii) compensate our client for the damages directly caused by nChain's and its affiliates' conversion of the Blockchain Content IP (and additional harmful activities) in an amount, payable in XRP, equal to **US$100 million** (the "***Client Damages***").  Our client believes that such Client Damages are reasonable in light of the harm directly caused by the actions of the members of the nChain Group to date, and that, should our client be required to litigate this matter, the actual damages that will be proven by industry experts at trial would be far in excess of this amount.  Moreover, such damages would not be limited to the claims set forth in this letter but would include additional damages incurred by our client resulting from other claims arising out of the discovery process.

Our client respectfully recognizes and appreciates that the Client Damages are material, and that the members of the nChain Group may be required to obtain financing in order to satisfy such Client Damages.  In recognition of the materiality of the Client Damages to be paid by the nChain Group to our client, our client agrees to provide a reasonable time period of thirty (30) calendar days for the nChain Group to obtain the necessary amounts and make payment to client. PLEASE MAKE EVERY EFFORT TO PAY THE FULL AMOUNT OF SUCH CLIENT DAMAGES IN XRP BY THE DATE THAT IS THIRTY (30) CALENDAR DAYS FOLLOWING nCHAIN'S RECEIPT OF THIS LETTER. UPON nCHAIN'S WRITTEN NOTICE TO OUR CLIENT THAT THE nCHAIN GROUP IS PREPARED TO IMMEDIATELY MAKE SUCH PAYMENT OF THE CLIENT DAMAGES TO OUR CLIENT, OUR CLIENT WILL PROVIDE DIGITAL WALLET INSTRUCTIONS TO WHICH SUCH PAYMENT MAY BE IMMEDIATELY WIRED BY THE nCHAIN GROUP.

Reference is made to that certain "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" sent to our client by nChain on or about December 14, 2023 (the "***Debt Proposal***"), pursuant to which nChain desired to restructure the Development Agreement in a manner that would convert the nChain contractual obligations into a convertible loan for nChain's benefit.  Those terms are hereby rejected in their entirety by our client.

**LITIGATION HOLD NOTICE**

**MR. FINNERUD HAS REASON TO BELIEVE THAT LITIGATION MAY RESULT FROM THE UNLAWFUL ACTIONS OF THE nCHAIN GROUP.**  Therefore, the members of the nChain Group are each now under a legal duty to preserve all evidence, whether printed or electronic that might become relevant to Mr. Finnerud's

claims (referred to generally, although not exclusively, herein as the "***Finnerud Claims***").  The members of the nChain Group are required to take the following steps immediately to protect and preserve any of that information that is in their possession or under their control until further notice.  Specifically, the members of the nChain Group will need to do the following immediately:

    1.    Suspend deletion, overwriting, or any other destruction of electronic information relevant to the Finnerud Claims that is under their control.  This includes electronic information wherever it is stored – at such member's or that of any employee, contractor or agent of the nChain Group, workstation, server, laptop, or at home.  It includes all forms of electronic communication – *e.g.*, e-mail, word processing, calendars, voice messages, videos, photographs, information in such member's or such employee's, contractor's, or agent's personal electronic device.  This electronic information must be preserved so that it can be retrieved at a later time.  The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – *i.e.*, it is not sufficient to make a hard copy of electronic communication.  The IT department of the members of the nChain Group should also attend to the preservation of electronic information on the server and on back-up tapes, if that is necessary.

    2.    Similarly, preserve any new electronic information that is generated after receipt of this letter that is relevant to the Finnerud Claims.

    3.    Additionally, the members of the nChain Group must preserve any hard copy under their control or the control of any of their employees, contractors, or agents.

PLEASE NOTE THAT THIS FIRM HAS INSTRUCTED MR. FINNERUD TO PRESERVE THE SAME INFORMATION THAT MAY BE IN HIS POSSESSION OR CONTROL.

[*Remainder of Page Intentionally Left Blank*]

- 4 -

I appreciate your reasoned contemplation of the matters set forth in this Notice and your honorable participation in the resolution of the associated matters.

All rights reserved by Mr. Finnerud without prejudice, UCC 1-207 and 1-308.

Sincerely,

VALHIL LAW, PC

James E. Vallee
Managing Partner

JEV/file

cc w/Encl:   Dale Evans – Senior Project Counsel (*via email*)
James Marchant – Chief Business Development Officer (*via email*)
Valentine Labarthe – Head of Commercial Strategy (*via email*)
Christine Leong – Chief Information Officer (*via email*)
Thomas Moretti – Head of Product Development (*via email*)
Eric Finnerud  (*via email*)

<u>EXHIBIT A</u>
nChain Statement on departure of Christen Ager-Hanssen



### nChain Statement on departure of Christen Ager-Hanssen



by Team nChain





**London 29th September**: The Board of the blockchain technology, IP licensing and consulting services company, nChain, confirms it has parted company with Christen Ager-Hanssen.

The Board has appointed Stefan Matthews to retake the executive reins as acting CEO, in addition to his position as Chairman, with immediate effect.

Stefan co-founded nChain in 2015, and under his stewardship, the company has grown to some 250 employees across three offices (Switzerland, London and Slovenia). Its stated purpose to "*make the world-changing potential of blockchain technology accessible to individuals, businesses and governments*" remains unaffected by these board changes.

Commenting on these developments Stefan Matthews, CEO and Chairman said:

"nChain remains wholly focussed on sharing its expertise and technology internationally, to empower businesses and enterprises both large and small to benefit from the opportunities of the global economy. Having founded this company over 8 years ago, I can state with confidence that the current Board will not be detracted from our focus."

"We will continue to expand our client-base and blockchain-related projects within the industry as one of the world's most dynamic innovators. We remain grateful for the support of our hugely talented team in Europe. The Board and I look forward to building on the company's successes."

Stefan Matthews is a co-founder of nChain and has served as the Executive Chairman of nChain Group since 2015. He has a wealth of experience in financial services across global enterprise organisations, where he successfully managed IPOs, raised capital, and facilitated mergers, divestiture, and corporate integration.

Stefan has played a pivotal role in driving innovation and the adoption of blockchain technology worldwide. His visionary leadership has propelled nChain to the forefront of the blockchain revolution with a commitment to fostering a decentralized future. Under his guidance, nChain continues to push the boundaries of blockchain solutions, empowering businesses, and individuals to harness the full potential of this technology.

**Related**

Block Dojo Reveals Next Chapter in Empowering Blockchain Innovation Across Developing Markets

nChain Company Statement

nChain Statement on departure of Christen Ager-Hanssen

Event Highlights: CBDC Conference, Istanbul Turkey



EXHIBIT B
Screenshot of Ayre Ventures website

