# Exhibit 18



**CMS Cameron McKenna Nabarro Olswang LLP**

Saltire Court
20 Castle Terrace
Edinburgh EH1 2EN

**DX** 553001, Edinburgh 18
**Legal Post** LP-2, Edinburgh 6

**T** +44 131 228 8000
**F** +44 131 228 8888

cms.law

**T** +44 131 200 7517
**E** Colin.Hutton@cms-cmno.com

Mr. James E. Vallee
Valhil Law, PC
800 Wilcrest, Suite 206
Houston, Texas 77042
United States

*By email to: jvallee@valhillaw.com.*

**Our ref COHU/EDN/206680.00001**

12 April 2024

Dear Mr. Vallee

**Re letters of January 29 2024 and February 27 2024**

1. This letter responds to your January 29 and February 27 letters demanding $100 million from our client, nChain UK Limited ("**nChain**"), for purported breaches of an alleged oral agreement and conversion of alleged intellectual property rights.

2. Our investigation thus far has confirmed the obvious: the demand is a preposterous and transparent attempt to leverage improperly obtained confidential and privileged information to attempt to extract a windfall payment.

3. In particular, you threaten that you have access to and intend to use, among other information,

    a. "evidence of many details set forth in that certain document… referred to as 'The Fairway Brief,' dated 26 September 2023"

    b. "emails from nChain executive officers, senior counsel and intellectual property counsel"

CMS Cameron McKenna Nabarro Olswang LLP is a limited liability partnership registered in England and Wales with registration number OC310335. It is a body corporate which uses the word "partner" to refer to a member, or an employee or consultant with equivalent standing and qualifications.  It is authorised and regulated by the Solicitors Regulation Authority of England and Wales with SRA number 423370 and by the Law Society of Scotland with registered number 47313. A list of members and their professional qualifications is open to inspection at the registered office, Cannon Place, 78 Cannon Street, London EC4N 6AF. Members are either solicitors, registered foreign lawyers, patent attorneys or otherwise legally qualified. VAT registration number: 974 899 925. Further information about the firm can be found at cms.law

CMS Cameron McKenna Nabarro Olswang LLP is a member of CMS Legal Services EEIG (CMS EEIG), a European Economic Interest Grouping that coordinates an organisation of independent law firms. CMS EEIG provides no client services. Such services are solely provided by CMS EEIG's member firms in their respective jurisdictions. CMS EEIG and each of its member firms are separate and legally distinct entities, and no such entity has any authority to bind any other. CMS EEIG and each member firm are liable only for their own acts or omissions and not those of each other. The brand name "CMS" and the term "firm" are used to refer to some or all of the member firms or their offices. Further information can be found at cms.law

Notice: the firm does not accept service by e-mail of court proceedings, other processes or formal notices of any kind without specific prior written agreement.

UK - 692731643.2



c. "affidavits and testimony of former and current C-suite executives and in-house and outside legal counsel, including nChain's former Chief Executive Officer, Christian [sic] Ager-Hanssen"

d. "nChain memoranda and corporate structural diagrams prepared by nChain attorneys describing deal terms of the [alleged] Development Agreement"

e. "audio recordings of discussions among nChain developers and attorneys with E. Smitty"

f. "paid invoices in accordance with the terms of the [alleged] Development Agreement"

g. "intellectual property filings and limited powers of attorney granted in connection with the [alleged] Development Agreement"

Valhil Law, PC, February 27, 2024, Letter at 1.[1]

4. nChain's privileged and confidential information, including the so-called "Fairway Brief," is the subject of an injunction prohibiting its disclosure and transmission, issued by the High Court of Justice in London, England, in an Order dated October 27, 2023, (the "October 27 Injunction"), in nChain Holding AG v. Christen Eugen Ager-Hanssen, CL-2023-745.[2]  nChain filed that action against Mr. Ager-Hanssen after he published a redacted version of the Fairway Brief on the internet and posted about it on X (formerly Twitter).  As nChain has explained in its filings, Mr. Ager-Hanssen's publication and post violated several provisions of nChain's agreement with Mr. Ager-Hanssen.  These disclosures also violated a duty of confidence that he owed nChain as nChain's former CEO.

5. The October 27 Injunction remains in place until after trial or a further order.  A hearing on nChain's application for summary judgment has been scheduled for April 19, 2024.  In addition, a separate hearing has been scheduled for May 3, 2024, on nChain's Contempt Application against Mr. Ager-Hanssen.  The hearing on the Contempt Application will address Mr. Ager-Hanssen's breaches of multiple orders issued in the litigation.

6. Pursuant to the October 27 Injunction, Mr. Ager-Hanssen may not, among other things, "use, publish or communicate or disclose to any other person" nChain's Confidential Information within his possession or control, including the Fairway Brief or its attachments.  The October 27 Injunction broadly defines "Confidential Information" to mean:

> any and all information, data or documentation, in whatever form disclosed to [Mr. Ager-Hanssen] directly or indirectly by [nChain] … including any trade secrets,

---

[1] The letter is enclosed.

[2] The Order is enclosed.



technical or business information, know-how, knowledge or data relating to the nChain group's past, present, planned or foreseeable business or technology.

*Id.* at 4.

7. Mr. Ager-Hanssen is also prohibited from breaching the October 27 Injunction "through others acting on his behalf or on his instructions or with his encouragement," such as your client. *Id.* at 5. It also warns that it is a "contempt of court for any person notified of this order knowingly to assist in or permit a breach of this Order" and that "**any person who knows of this order and disobeys this order or does anything which helps or permits any person to whom this order applies to breach the terms of this order may be held to be in contempt of court and may be imprisoned, fined or have their assets seized**." *Id.* at 1, 6 (emphasis added).

8. The October 27 Injunction is enforceable in United States courts. The order itself provides that it may be "**declared enforceable by**" or be "**enforced by**" a foreign court, *id.* at 5 (emphasis added), and there is ample authority permitting a court in the United States to "enforce[] a foreign country['s]" injunction based on principles of comity. *Siko Ventures v. Argyll Equities, LLC*, 2005 U.S. Dist. LEXIS 21257, *7 (W.D.T.X. Aug. 8. 2005) (collecting several cases); *see also* Restatement (Second) of Conflict of Laws § 102 cmt. g. ("A valid decree rendered in a foreign nation that orders or enjoins the doing of an act will usually be recognized in the United States.").

9. Given your letters and recent postings[3] by you and your client, it appears that your client may be acting "on [Mr. Ager-Hanssen's] behalf or on his instructions or with his encouragement" in violation of the October 27 Injunction, and we will take action to protect our client's rights if this conduct persists.

10. The October 27 Injunction aside, your threats to release nChain's confidential information if your client is not paid $100 million appears to violate your duties as an attorney under applicable ethical rules. The Texas Disciplinary Rules of Professional Conduct prohibit an attorney from using means that "violate the legal rights of" a "third person," and prohibit using legal process to "harass or intimidate others"—as your letter seeks to do. Tex. R. Disc. P. Rule 4.04, Preamble. As the Texas Supreme Court has held, "a lawyer who uses privileged information improperly obtained from an opponent potentially subverts the litigation process." *In re Meador*, 968 S.W.2d 346, 351 (Tex. 1998).

11. Please confirm by no later than **April 16**, 2024 that you and your client will securely segregate, and will not access or circulate, any confidential information of nChain. Please also confirm:

---

[3] *See, e.g.*, Jimmy Vallee [@jvallee2000]. (2024, March 12). *COPA vs @Dr_CSWright closing argument paragraph 3 says it all: Dr Wright has been shown to have lied on an extraordinary scale* [Quote posting Christen-Ager Hanssen] [Post]. X. https://x.com/jvallee2000/status/1767537803632558582?s=20; E. Smitty [@THEREALESMITTY]  (2024, March 10), *Well I'll Be Darned!!! I made the Christen Ager-Hanssen Smear Website* [Reply] X. https://x.com/THEREALESMITTY/status/1766950781041750319?s=20.



1. What other Confidential Information (as defined in the October 27 Injunction) does Mr. Finnerud have in his possession?

2. How did Mr. Finnerud obtain Confidential Information pertaining to nChain, including the Confidential Information contained in the Fairway Brief?

3. When did Mr. Finnerud obtain such Confidential Information?

4. What recordings of Confidential Information does Mr. Finnerud possess?

5. Who provided recordings of Confidential Information to Mr. Finnerud?

6. Where are these recordings located?

nChain expressly reserves, and does not waive, all rights.


Yours sincerely


**CMS Cameron McKenna Nabarro Olswang LLP**