# Exhibit B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| In the Matter of the Application of nChain Holding AG | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. _____ |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Eric Finnerud (also known as "E. Smitty")

_____

*(Name of person to whom this subpoena is directed)*

&#x2714; *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment 1 to this subpoena.

| Place: Barnes & Thornburg LLP<br>        3340 Peachtree Road NE, Suite 2900<br>        Atlanta, GA 30326-1092 | Date and Time: |
|---|---|

&#x274F; *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | |
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  nChain Holding AG
_____ , who issues or requests this subpoena, are:

John M. Moye, 3340 Peachtree Road NE, Suite 2900, Atlanta, GA 30326 | (404) 264-4006 | JMoye@btlaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*

                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT 1

## DEFINITIONS

1.      "Ager-Hanssen" refers to Christen Ager-Hanssen and any of his agents, assigns, employees, or any individual or entity acting on his behalf or under his direction or control.

2.      "All" means any and all.

3.      "CMS" refers to "CMS Cameron McKenna Nabarro Olswang LLP" and any of its predecessors, successors, assigns, directors, managers, members, employees, consultants, advisors, representatives, agents, attorneys, accountants, parents, subsidiaries, affiliates, and all Persons acting or purporting to act on behalf of any of the foregoing.

4.      "Communication" means Documents or media constituting or concerning any contact, oral or documentary, formal or informal, at any place or under any circumstance whatsoever whereby information of any nature is transmitted or transferred, including, without limitation, Email, text messages, instant messages, phone calls, facsimiles, or a person seeing or hearing any information by any means. The term "Communication" also includes drafts, revisions, or copies of any such Communication if the draft, revision, or copy is in any way different from the original.

5.    "Confidential Information" means any and all information, technology and materials, in whatever form (whether oral, written, electronic, digital or otherwise), tangible or intangible, pertaining in any manner to the business of or used by nChain, or to any other Person or entity to whom or which nChain owes a duty of confidentiality, including any trade secret, technical or business information, knowhow, knowledge or data relating to nChain's past, present, planned or foreseeable business or technology.

6.    "Concerning," and any variant thereof means, without limitation, constituting, referring to, alluding to, responding to, relating to, connected with, commenting upon, in respect to, about, regarding, discussing, showing contrasting, comparing, contradicting, describing, reflecting, or analyzing.

7.    "Custos" refers to Custos Group Limited and its predecessors, successors, consultants, advisors, representatives, agents, attorneys, accountants, employees, parents, subsidiaries, affiliates, and all Persons acting or purporting to act on behalf of any of the foregoing.

8.    "Device" refers to any and all electronic devices that were used to store or transmit information, whether for personal or business purposes, including but not limited to desktop computers, laptop computers, tablet computers (such as iPads or similar tablet devices), external hard drives, flash drives, USBs, other electronic storage devices, Personal Data Assistants, smart phones (such as iPhones, Android-

operated devices, Blackberries, or other similar devices), other electronic devices, and all backup tapes or other backup or disaster recovery mechanisms for any such device.

9.     "Document" is to be interpreted in the broadest possible sense and includes all recorded, renderable, electronically stored, or retrievable writing, text, images, information, or data (including any producible metadata), on or in any print or electronic media or storage format. The term "Document" also includes drafts, revisions, or copies of any Document if the draft, revision, or copy is in any way different from the original (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts of the following items, whether printed or recorded (through a sound, video, or other electronic magnetic, or digital recording system) or reproduced by hand, as well as materials underlying, supporting or used in the preparation of such a Document:  letters, correspondence, telegrams, telexes, facsimile transmissions, memoranda, records, summaries of personal conversations or interviews, notes, financial or statistical statements or compilations, contracts, agreements, analyses, pictures, films, plans, tape recordings, videotapes, disks or discs, diskettes, flash drives or thumb drives, websites, Email and other electronically transmitted messages, text messages, chat or communicator transmissions, voicemail messages, online chat or instant messages (e.g., Slack Teams, Discord, WhatsApp, or Signal

messages), interoffice Communications, and any other writings, papers, or tangible things of whatever description; and including any Electronically-Stored Information (such as (i) information on or in computer memory, (ii) information on or in computer or network backup files, and (iii) information which has been "deleted" or "erased" but is recoverable), whether located on-site or at an off-site facility.

10.     "Document Request" or "Request" shall mean each of the specific Document Requests set forth herein, individually or collectively as the context requires, understood in connection with the Definitions and Instructions herein.

11.     "Electronically stored information" or "ESI" shall be afforded the broadest possible definition and shall mean all potentially discoverable electronically stored information and includes, but is not limited to, all electronically stored Documents. ESI further includes, without limitation, the following: (i) information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.); (ii) internal or external web sites; (iii) output resulting from the use of any software program including, without limitation, word processing Documents, spreadsheets, database  files, charts, graphs and outlines, electronic mail, online messaging platforms (e.g., Slack, Teams, Discord, WhatsApp, or Signal), including chats, messages, direct messages, and ticketing software, bulletin board programs, operating systems, source code, PRF files, PRC

files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; (iv) activity listings of electronic mail receipts and/or transmittals; (v) and any and all items stored on computer memories, hard disks, floppy disks, thumb drives, flash drives, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal, such as, but not limited to, cell phones, iPhones and other smart phones, personal digital assistants, handheld wireless devices, or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents Requested herein.

12.    "Email" shall have its customary and usual meaning, and shall be construed to include all work and personal Email accounts that You have used.

13.    "Fairway Brief" means the Document that Valhil Law attached to its February 27 Letter as Exhibit A, and that was described on page two of that Letter as, "evidence of many details set forth in that certain document commonly referred to as 'The Fairway Brief,' dated 26 September 2023, and attached hereto as Exhibit A for your convenience."  The Fairway Brief also includes any non-identical copy or version of that Document.

14.    When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to

a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

15.     When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addresse(s) and recipient(s).

16.     "nChain" refers to "nChain Holding AG," "nChain UK Limited," and their predecessors, successors, consultants, advisors, representatives, agents, attorneys, accountants, employees, parents, subsidiaries, affiliates, and all Persons acting or purporting to act on behalf of any of the foregoing.

17.     "Person(s)" shall mean any natural person or legal entity, including a corporation, partnership, proprietorship, group, association, organization, business entity, governmental body, agency, or trust, and its predecessors, successors or current and former parents, subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents (including attorneys, accountants, and investment or other advisors), or any other Person or entity acting, or purporting to act, on its behalf.

18.     As necessary to bring within the scope of the requests any Documents or information that might otherwise be construed to be outside their scope, the words

"and" and "or" shall be construed either disjunctively or conjunctively; the singular shall include the plural and the plural shall include the singular; the term "any" means "any and all" and the term "all" means "any and all"; "any" and "all" shall include "each" and "every"; the past tense shall be construed to include the present tense and vice-versa as necessary to make the request inclusive rather than exclusive; the use of the masculine includes the feminine, and the use of the feminine includes the masculine; "herein" and words of similar import shall refer to the Document requests as a whole, and not to any particular portion of the Document requests; and the word "including" means "including without limitation" or "including, but not limited to."

19.     "You," and "Your" refer to Eric Finnerud (also known as "E. Smitty") and—to the extent necessary to bring within the scope of the Requests all information that might otherwise be construed to be outside of your scope—Your consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing.  "You" and "Your" also refer to your companies, their subsidies, affiliates, predecessors, successors, assigns, members, principals, partners, directors, officers, employees, agents, representatives, consultants, attorneys, or anyone else acting or purporting to act on your or your companies' behalf.

20.     "Valhil Law, PC" or "Valhil Law" means the firm or company that James E. Vallee was identified as the Managing Director for on Valhil Law's February 27 Letter to CMS.  References to "Valhil Law" include all Valhil Law predecessors, successors, consultants, advisors, representatives, agents, attorneys, accountants, employees, parents, subsidiaries, affiliates, and all Persons acting or purporting to act on behalf of any of the foregoing.

21.     James E. Vallee refers to the individual identified as the "Managing Partner" on "Valhil Law's February 27 Letter" to CMS, and the individual who signed Valhil Law's February 27 Letter."

22.     "Valhil Law's February 27 Letter" or "the February 27 Letter" means the letter that James E. Valee sent to CMS on February 27, 2024, regarding "nChain – Distromint – Conversion of Intellectual Property and Related Matters – CMS Ref. COHU/EDN/206680.00001."  The Letter was sent in response to a letter CMS sent Valhil Law PC on the same day, February 27, 2024, regarding "Our ref COHU/EDN/206680.00001."  CMS's letter was itself a response to Valhil Law's January 29, 2024 letter ("Valhil Law's January 29 Letter") sent to nChain UK Ltd regarding a supposed "NOTICE OF BREACH; CLAIM FOR CONVERSION OF INTELLECTUAL PROPERTY; LITIGATION HOLD NOTICE."

23.     A term that is not capitalized in the Instructions and/or Requests below but is capitalized in these Definitions should be construed to include both its

customary and usual meaning as well as its defined meaning as set forth in these Definitions.

## **INSTRUCTIONS**

1.      In responding to these Document Requests, You shall produce all responsive Documents and tangible things which are in Your possession, custody, or control or in the possession, custody, or control of Your current or former directors, officers, partners, members, employees, advisors, agents, representatives, subsidiaries, managing agents, affiliates, attorneys, accountants, auditors, investigators, servants, or other Persons acting or purporting to act on Your behalf. A Document shall be deemed to be within Your control if You have the right to secure the Document or a copy of the Document from another Person having possession or custody of the Document, or if the Document is deemed to be within Your control under applicable law. If a Document is responsive to the Requests and is not in Your control, identify the Person or entity having possession or custody.   These Documents Requests extend to Documents and tangible things inside and outside the United States of America.

2.      Your obligations pursuant to the Document Requests are not limited or affected by the availability of any Document or Communication through any other source. The fact that a Document or Communication is produced by another Person

does not relieve You of Your obligation to produce Your iteration of that Document or Communication, even if identical in all respects.

3.      Each requested Document shall be produced in its entirety, along with any attachments, drafts, and non-identical copies, including copies that differ by virtue of handwritten or other notes or markings.

4.      If any portion of any Document or Communication is responsive to any Request, the entire Document or Communication, including any attachments or disclosures, must be produced. If a Document responsive to the Document Requests cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

5.      All Documents and Communications should be produced in their original form, as they are maintained in the ordinary course of business, including in the sequence in which they are ordinarily maintained, or shall be organized and labeled to correspond to the specific Document Requests to which they are responsive. All Documents and Communications shall be produced in their entirety, including with any attachments or enclosures.

6.      All Documents or Communications stored in electronic format, including Email, shall be produced with all electronic data including metadata, sequence, and attached or embedded objects.

7.     Unless otherwise agreed by all parties, all Documents shall be Bates stamped and shall be produced electronically in single page Group IV TIF format (except that Microsoft Excel, PowerPoint, and data files shall be produced in native formats), with load files containing, for each Document, extracted searchable text and all available metadata for at least the following fields: PRODBEG; PRODEND; PRODBEGATTACH;      PRODENDATTACH;      DATESENT;      TIMESENT; DATECREATED; TIMECREATED; EMAILTO; EMAILFROM; EMAILCC; EMAILBCC; EMAILSUBJECT; TEXT PATH; and NATIVE PATH.

8.     If a Document or Communication is responsive to more than one Document Request, You are not required to duplicate production.

9.     You shall produce in their original form all Documents and Communications that cannot be legibly copied.

10.     If any objection is made to any of these Document Requests, the response shall state with specificity the grounds for the objection, whether any Document or Communication is being withheld from inspection and production based on such objection, or whether inspection or production of the responsive items will occur notwithstanding such objection. If You object to any Document request on grounds of overbreadth or similar bases, You are instructed to respond to the Document Request as narrowed. For the avoidance of doubt, You must make clear the extent to which You have narrowed Your response to any Document Request and

inform nChain as to whether any requested Documents or Communications are being withheld because of that narrowing.

11.    If You claim any form of privilege, immunity, or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested Document or Communication, furnish a list identifying each Document or Communication for which the privilege, immunity, or other objection is claimed, together with the following information: a description of the type of Document or Communication (e.g., Email, letter, agreement, memorandum, etc.); date; sender; recipients; Persons to whom the Document or Communication (or copies thereof) was provided; subject matter; and basis upon which a privilege, immunity, or other objection is claimed.

12.    If You claim privilege or immunity regarding only part of a Document or Communication, produce the part as to which there is no claim of privilege or immunity, and furnish a list identifying each item that is partially withheld together with the information listed in Instruction 11 above. Material should not be redacted except to protect a bona fide privilege or immunity. Redactions based on the purported sensitivity or irrelevance of discovery material are improper.

13.    If You cannot satisfy any request, either in full or in part, You shall produce Documents and Communications to the extent possible, specifying the reason for Your inability to produce further Documents or Communications.

14.   If there are no Documents or Communications responsive to any request or subpart thereof, You shall state so in writing.

15.   If any Document or Communication requested herein was lost, discarded, destroyed, deleted, or otherwise is no longer in Your possession, custody, or control, state and specify in detail for each such Document or Communication: a description of the type of Document or Communication (e.g., Email, letter, agreement, memorandum, etc.); date; sender; recipients; Persons to whom the Document or Communication (or copies thereof) was provided (including their job titles and professional affiliations); the information contained therein; the date upon which it ceased to be in Your possession, custody, or control; the manner of disposal; the reasons for disposal; the Persons authorizing the disposal; the Persons effectuating the disposal; the Document requests to which such document or Communication is responsive; and the identity of all Persons having knowledge of the contents, or circumstances around the disposition, thereof.

16.   These Document Requests are continuing in nature and any Document obtained subsequent to production which would have been produced had it been available or its existence been known at the time of production, shall be produced forthwith.

17.   Unless otherwise stated, the relevant time period (the "Relevant Period") for the Requests is June 1, 2022, to the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Without regard to time period, all Documents and Communications concerning Ager-Hanssen (for the avoidance of doubt, including all Communications by and between You and Ager-Hanssen).

2.      Without regard to time period, all Documents and Communications concerning nChain, including but not limited to:

   a.  Without regard to time period, all Documents and Communications concerning any contract, written or oral, that You entered into with nChain, including the contract referenced in Valhil Law's January 29 Letter to nChain.

   b.  Without regard to time period, all Documents and Communications concerning nChain's Confidential Information (for the avoidance of doubt, including all Communications between You and any third party concerning such Confidential Information).

3.      Without regard to time period, all Documents and Communications concerning Andrew Moody, David Brookes, Zafar Ali KC, Endri Gjata, Lars-Jacob Bo, and Peter Coulson (together with Ager-Hanssen, the "Co-Conspirators").

4.      Without regard to time period, all Documents and Communications concerning Ager-Hanssen and the Co-Conspirators' use of the Fairway Brief.

5.      Without regard to time period, all Documents and Communications concerning Ager-Hanssen and the Co-Conspirators' attempt to gain access to nChain's Confidential Information.

6.      Without regard to time period, all Documents and Communications exchanged between You and Custos concerning nChain's Confidential Information, including the Fairway Brief.

7.      All Documents and Communications concerning how You and/or Valhil Law came to possess each of the documents referenced in items one through eight on page two of Vahil Law's February 27 Letter to CMS, including the Fairway Brief.

8.      All Documents and Communications concerning the "intellectual property filings and limited powers of attorney granted in connection with the Development Agreement" referenced in Valhil Law's February 27 Letter to CMS.

9.      All "emails from nChain executive officers, senior counsel[,]  and intellectual property counsel" referenced in Valhil Law's February 27 Letter to CMS.

10.     All "press releases, articles, conference video, and other media published by nChain" referenced in Valhil Law's February 27 Letter to CMS.

11.     All "affidavits and testimony of former and current C-suite executives and in-house and outside legal counsel, including nChain's former Chief Executive

Officer, Christian [sic] Ager-Hanssen" referenced in Valhil Law's February 27 Letter to CMS.

12.     All "nChain memoranda and corporate structural diagrams prepared by nChain attorneys describing deal terms of the Development Agreement" referenced in Valhil Law's February 27 Letter to CMS.

13.     All "audio recordings of discussions among nChain developers and attorneys with E. Smitty" referenced in Valhil Law's February 27 Letter to CMS.

14.     All "evidence of many details set forth in that certain document commonly referred to as 'The Fairway Brief,' dated 26 September 2023" referenced in Valhil Law's February 27 Letter to CMS, and attached as Exhibit A to Valhil Law's February 27 Letter.

15.     All "paid invoices in accordance with the terms of the Development Agreement" referenced in Valhil Law's February 27 Letter to CMS.